1  **WO**
2  NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel J. Hernandez, | No. CV 08-2062-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| State of Arizona, Department of Transportation, | |
| Defendant. | |

Pending before the Court is the Motion for Summary Judgment (Dkt. # 61) filed by the Arizona Department of Transportation ("ADOT"). For the following reasons, the Court grants the Motion.

## BACKGROUND

In February 2006, Plaintiff Manuel Hernandez ("Hernandez"), a person of Hispanic decent, applied for a position as ADOT's Supply Warehouse Manager. Rather than promote Hernandez, who had been working for ADOT as a Storekeeper since 1990, ADOT selected Raymond Hendrickson ("Hendrickson"), a Caucasian male, to fill the position. Shortly thereafter, Hernandez filed this lawsuit alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

The material facts in this case, which are generally undisputed, concern events beginning in the late 1990s and continuing until February 2006 when ADOT selected Hendrickson, rather than Hernandez, for the Supply Warehouse Manager position. On

August 15, 1997, Hernandez filed a separate class action lawsuit against ADOT, alleging discrimination against employees on the basis of national origin. The class action claims were ultimately settled in September 2000 when ADOT entered a consent decree, which provided that "certain named individuals could present claims for damages for alleged ADOT acts of discrimination, retaliation[,] or discriminatory employment polices for the period of January 1, 1994 to December 19, 2000." (*See* Dkt. ## 62 at ¶ 7; 66 at ¶ 7.) As a result of the class action lawsuit, Hernandez ultimately recovered $18,000 in emotional distress damages, suffered from the discriminatory environment at ADOT during the class period.[1] (*Id.* at ¶ 8.) Some of Hernandez's coworkers, however, allegedly resented him for participating in the class action. Because they did not believe his discrimination claims were valid, these employees apparently labeled Hernandez a "troublemaker." (Dkt. # 66 at ¶ 102.)

Throughout his career with ADOT, Hernandez worked as a "Storekeeper," which means that he was responsible for "receiving, shipping, keeping up with inventory, and product knowledge." (Dkt. ## 62 at ¶; 66 at ¶ 5.) From 1990 until his retirement in 2009, Hernandez worked as a Storekeeper in three different ADOT warehouses. (*Id.*) He also periodically filled-in for his immediate supervisor when the supervisor was absent. (Dkt. # 66 at ¶ 5.)

In June 2005, ADOT's Supply Warehouse Manager, Victor Ausbun ("Ausbun"), announced that he would be retiring, effective July 8, 2005, from his position. Upon learning of Ausbun's decision, Hernandez immediately expressed interest in the position and completed the necessary paperwork to apply for the opening. (Dkt. # 66 at 93.) But rather than post the position to internal applicants, ADOT canceled the usual process of opening the position for a permanent replacement. Instead, ADOT placed Hendrickson into the

---

[1]The Order awarding damages to Hernandez in the class action lawsuit is *Puente v. Arizona*, 2007 WL 1101259 (D. Ariz. Apr. 19, 2007).

1 position on a temporary "non-competitive special detail."[2] Mike Lessard ("Lessard"), who
2 supervised the Supply Warehouse Manager, made the decision to place Hendrickson into the
3 position on the special detail. Lessard's decision was subsequently approved by ADOT's
4 Traffic Operations Manager, Thomas Goodman ("Goodman"). According to ADOT, Lessard
5 and Goodman chose Hendrickson for the special detail because Hendrickson had filled-in for
6 Ausbun as the Supply Warehouse Manager when he was absent and because Lessard was
7 confident that Hendrickson "was ready to step in immediately and fill the role without any
8 additional training or supervision." (*See* Dkt. # 66 at ¶¶ 13, 16.)

Hendrickson's special detail officially began on June 13, 2005, and it was scheduled to last only three months. In early September 2005, however, Goodman requested that Hendrickson's special detail be extended until December 13, 2005 so that ADOT could conduct interviews and permanently fill the position. Subsequently, in September of 2005, ADOT approved the necessary paperwork to permanently fill the Supply Warehouse Manager position and posted the opening on ADOT's "Job Opportunity Bulletin." (Dkt. # 66 at ¶ 97.) On October 13, 2005, six candidates, including Hernandez, were selected to interview for the position. (Dkt # 66 at 29.)

In November 2005, before interviews were scheduled, the Traffic Operations Engineer, to whom the new Supply Warehouse Manager would report, resigned his position. (Dkt. # 62 at ¶ 31.) Thereafter, Lessard wrote a memorandum to ADOT's human resources department requesting that Hendrickson's special detail be extended so that a new Traffic Operations Engineer could be selected and participate in the interview process. (*Id.*)[3]

---

[2]Arizona Administrative Code, Article 2, § R2-5-208(c) authorizes the state to temporarily fill a vacant position through a "short-term special detail." When the special detail is non-competitive, it is limited to a maximum of six months. Ariz. Admin. Code § R2-5-208(C)(1)(a).

[3]Hernandez objects to Lessard's memorandum on grounds that it is inadmissible hearsay. The Court, however, considers this document for purposes of this Order as this memorandum was prepared by Lessard, a person with knowledge of the information conveyed in the Memorandum, and kept by ADOT in the regular course of its business. *See*

- 3 -

Once the new Traffic Operations Engineer was selected, the interview process for the Supply Warehouse Manager position went forward. On February 2, 2006, a three-member panel consisting of Anna Widener ("Widener"), Raul Amavisca ("Amavisca"), and the new Traffic Operations Engineer, Al Zubi ("Zubi"), interviewed the six candidates. (Dkt. # 66 at ¶¶ 36, 61–62.) According to Hernandez, two of these panelists, Widener and Amavisca, had previously told other ADOT employees that they considered Hernandez to be a "troublemaker." (Dkt. # 62, Ex. 2 at 19, 32; #66, Ex. 15 at 30, 49, Ex. 16 at 31.) Widener also indicated that Hernandez's reputation as a "troublemaker" stemmed from the lawsuit that Hernandez filed in the late 1990s. (*See* Dkt. # 62, Ex. 11 at 141–44.)

After each interview, the panelists reviewed their notes and assigned scores to the candidates. The scoring process assigned a score based on the following three categories: (1) the candidates' answers to the interview questions, (2) his or her presentation skills, and (3) his or her resume. The interview score counted for 70% of the candidate's total score, presentations skills counted for 20%, and the resume counted for 10%. (Dkt. # 66 at 43.) Hernandez received nine out of ten points on his resume, 17 out of 20 on his presentation skills, and 47 out of 100 on his interview questions. After the interviews were completed and the panel totaled the candidates' scores, Hernandez received a score of 59, which was the lowest of the six applicants. Hendrickson, who received the highest score with 90 points, was offered and accepted the position as Supply Warehouse Manager. Hernandez, however, alleges that these scores were not indicative of the applicants' qualifications because two members of the interview panel were biased against Hernandez due to his ethnicity and participation in the 1990s civil rights lawsuit against ADOT. According to Hernandez, Widener also approached him shortly after the interview and told him that he would "be surprised who they're going to hire." (Dkt. # 66 ¶ 104.)

On August 4, 2006, Hernandez filed a Charge of Discrimination with the EEOC as required under 42 U.S.C. § 2000e-5(b). In his Charge, Hernandez alleges the following:

---

Fed. R. Evid. 803(6).

> I began my employment on approximately April 11, 1988, my current job is Storekeeper. On approximately July 8, 2005, Victor Ausbun retired as the Supply Warehouse Manager. I immediately inquired about the vacancy and was told that the position would be posted. However, Raymond Hendrickson, White was detailed to the position. The position was posted several months later and I was interviewed, however, Raymond Hendrickson was selected for the position.
>
> I believe that I have been discriminated against because of my National Origin, Hispanic and retaliated against for opposing practices made unlawful under Title VII of the Civil Rights Act of 1964, as amended.

(Dkt. # 66 at ¶ 74.) Thereafter, Hernandez obtained notice of his right to sue from the EEOC, and in November 2008, he brought the instant retaliation, discrimination, and ostracism claims against ADOT. (Dkt. # 1.) On August 28, 2009, ADOT moved for summary judgment with respect to each of Hernandez's claims.

## **LEGAL STANDARD**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). The dispute must also be genuine; that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

On a Motion for Summary Judgment, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, need not disprove matters on which the opponent has the burden of proof at trial. *Id.* at 323. In such cases, the burden is on the nonmoving party to establish a genuine issue of material fact. *Id.* at 322–23. The nonmoving party "may not rest upon the mere allegations or denials of [the

party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

**DISCUSSION**

Hernandez asserts three claims under Title VII: retaliation for his involvement in the class action lawsuit; disparate treatment based on national origin, and an ostracism claim. The Court grants summary judgment on each of these claims.

**I.     Hernandez's Retaliation Claim Fails.**

Title VII prohibits retaliation against an employee because he or she has opposed an unlawful employment practice. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show (1) that he or she engaged in protected activity, (2) a materially adverse action, and (3) a causal connection between the two. *Surrell v. Cal. Water Serv.*, 518 F.3d 1097, 1108 (9th Cir. 2008). At the prima facie stage, the causal link is construed broadly; a plaintiff must merely "prove that the protected activity and the negative employment action are not completely unrelated." Once the prima facie case is shown, the employer may articulate some legitimate, non-retaliatory reason for the challenged action. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464–65 (citations omitted). Should the employer carry this burden, the plaintiff must show that the stated reason was not the employer's true reason, but was a mere pretext for retaliation. *Id.* (citations omitted). While Hernandez has sufficiently established a prima facie case of retaliation, he has not presented sufficient evidence of pretext to survive summary judgment on this claim.

**A.     Prima Facie Case**

Hernandez has presented a prima facie case of retaliation. In the late 1990s, Hernandez engaged in the protected activity of filing charges of discrimination and retaliation against ADOT and opposing prohibited employment practices. Though ADOT settled the class action lawsuit in 2000, a final determination of damages was still pending in February 2006, when Hernandez suffered an adverse employment action—i.e. when he was passed up for promotion. Hernandez has also demonstrated a causal link between the

protected activity and the adverse employment action. Specifically, Hernandez has submitted evidence that Hendrickson was selected, at the exclusion of Hernandez, for the non-competitive special detail just three months after Hernandez testified about discriminatory and retaliatory conduct in an evidentiary hearing related to the class action. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (holding that causation may be inferred from timing alone where an adverse employment action follows on the heels of the protected activity).

### B. Legitimate Non-Retaliatory Reason

Because Hernandez has established a prima facie case of retaliation, the burden of production now shifts to ADOT to articulate a legitimate, non-retaliatory reason for its refusal to promote him. *See Steiner*, 25 F.3d at 1464–65. To meet this burden, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by [retaliatory] animus." *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981); *see also Steiner*, 25 F.3d at 1464–65 (applying this standard in the context of a retaliation claim).

In this case, ADOT has produced evidence that Hendrickson was selected for the special detail because ADOT believed that he could step in immediately as Supply Warehouse Manager without any training based on the fact that he covered that position when the previous Supply Warehouse Manager was absent. ADOT has also presented evidence that it extended the special detail because ADOT wanted its new Traffic Operations Engineer, to whom the Supply Warehouse Manager reported, to participate in the interview process. In addition, ADOT has evinced that Hernandez was not promoted to the permanent position because he performed poorly in the interview. According to ADOT, the evidence shows that of the six candidates interviewed, he received the lowest interview score. This evidence is sufficient to allow a rational jury to conclude that the employment decision was not motivated by retaliation. *See Burdine*, 450 U.S. at 257. The situation here is similar to that in *Lamar v. Dep't. of Econ. Sec.*, 2008 WL 2741630 (D. Ariz. July 11, 2008). In *Lamar*,

the government claimed that a plaintiff "was not promoted due to her poor interview scores." *Id.* at *5. In holding that this was a legitimate reason, the court explained:

> All candidates for the position were interviewed by a three member panel, and Plaintiff received the lowest score out of all the candidates interviewed from each of the interviewers. These are legitimate . . . reasons for not promoting Plaintiff.

*Id.* Similarly, Hernandez received the lowest score from the interview panel. This is sufficient to shift the burden of production back to Hernandez to show are pretext.

### C. Pretext

Hernandez fails to carry his burden of showing that ADOT's explanation for selecting Hendrickson is pretext for retaliation. To demonstrate that the employer's reason is pretextual, a plaintiff may either show that the employer's proffered explanation is "unworthy of credence" or persuade the that a retaliatory reason "more likely motived the employer." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123–24 (9th Cir. 2000) (citing *Burdine*, 450 U.S. at 256); *see also Gray v. Masterfoods, USA*, 304 F. App'x. 611, 612 (9th Cir. 2008) (applying the same test for pretext in a retaliation claim as that applied in discrimination claims). In the context of pretext, an employer's ambiguous remark, that is not directly related to an adverse employment decision, is insufficient to preclude summary judgment. *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998). In this Circuit, pretext can be proven with either direct evidence or circumstantial evidence, but where the plaintiff relies on circumstantial evidence to prove pretext, that evidence must be "specific" and "substantial" to survive summary judgment. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (2003) (citing *Manatt v. Bank of Am.*, 339 F.3d 792, 801 (9th Cir. 2003)). Evidence of pretext is both specific and substantial when it is "sufficient to raise a genuine issue of material fact under Rule 56(c)." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029 (9th Cir. 2006).

Hernandez's retaliation claim turns on whether he has presented admissible evidence that is also sufficiently "specific" and "substantial" so that a reasonable jury could find that ADOT's reason for promoting Hendrickson is pretext. Here, Hernandez presents deposition

testimony from his wife, Jana Olson, in which Olson stated that on one occasion in the past, she heard Widener refer to Hernandez as a "troublemaker." In response to questioning, Olson testified:

> A: I know Anna Widener made the statement that [Hernandez] was a troublemaker. I heard her say that . . . .
>
> Q: When did you hear Anna Widener say that [Hernandez] was a troublemaker?
>
> A: It was years ago. I don't remember.
>
> Q: Where were you?
>
> A: In the warehouse at the counter.
>
> Q: And that happened to you, or you heard her say it to somebody else?
>
> A: She wasn't saying it to me. She was saying it to someone else. I don't recall who it was.
>
> Q: Do you know why she thought [Hernandez] was a troublemaker?
>
> A: No. I don't know why.

(Dkt. # 66, Ex. 15 at 30–31.)

Hernandez also points to testimony from another ADOT employee, Nkosazanna Boyd ("Boyd"), who indicated in a July 20, 2009 deposition that Widener did not think highly of Hernandez:

> Q: What did Anna Widener say about Manny Hernandez?
>
> A: I can't remember specifics at this time.
>
> Q: Okay. Do you remember any general comments?
>
> A: . . . She felt that [Hernandez]— felt that he was making claims and statements just to stir things up and they didn't have a valid point.
>
> Q: And why—I mean do you remember a conversation where she said that?
>
> A: Just in general conversation. She came over to where I worked. At that time, I can't remember something specific was going on [in] the yard at the time and she just made, like, a general comment that, well you know

|   |    | [Hernandez] has something to say about whatever was going on. You know Manny has something to say about it. Just made a general comment like that. |
|---|----|---|
|   | Q: | Do you recall when that happened? |
|   | A: | I can't recall specifically the date. |

(Dkt. # 66, Ex. 16 at 31.)

According to Olson's and Boyd's testimony, they overheard Widener refer to Hernandez as a "troublemaker" who "stir[red] things up." (*See id.*) And while this deposition testimony fails to explain when or why Widener thought Hernandez was a "troublemaker," Hernandez contends Widener's belief that he was a "troublemaker" stems from the class action lawsuit Hernandez filed against ADOT. Here, Hernandez points to Widener's July 21, 2009 deposition, in which she denied ever calling Hernandez a "troublemaker," but explained why other ADOT employees thought he was a "troublemaker:"

|   | Q: | What was there that you heard from [other ADOT employees] who said that [Hernandez] was a troublemaker that made you associate it with the lawsuit. |
|---|----|---|
|   | A: | . . . I don't recall who had made the comment, but [someone] had said something about [Hernandez] recruiting people to be involved in the lawsuit with him. That was what I had heard and basically was told you need to be careful because he'll do the same thing to you. |

(Dkt. # 62, Ex. 11 at 144.) In other words, Widener explains that other ADOT employees believed Hernandez was a "troublemaker" because he was recruiting people to participate in the class action lawsuit. (*See id.*) Hernandez argues that this explanation indicates that Widener also thought Hernandez was a "troublemaker" based on the class action. According to Hernandez, if Widener called him a "troublemaker," as Olson and Boyd aver, it follows that Widener did so for the same reason that she offers to explain why other employees thought Hernandez was a "troublemaker."

Hernandez's allegation that Widener called him "troublemaker" is inadmissible hearsay. Although Hernandez argues that these statements are an admission of a party opponent under Federal Rule of Evidence 801(d)(2)(D), the Court disagrees. To fall within Rule 801(d)(2)(D) exception, a statement must concern a matter within the scope of an

employee's agency relationship and must be made during the existence of that agency relationship. Fed. R. Evid. 801(d)(2)(D). Statements made prior to the formation of the agency relationship are not admissible under the rule. *See Robinson v. Audi Nsu Auto Union Aktiengesellschaft*, 739 F.2d 1481, 1487 (10th Cir. 1984); *see also Quintanilla v. AK Tube LLC*, 477 F. Supp.2d 828, 837 (N.D. Ohio 2007) (holding that a statement of "an individual who was not a 'supervisor' at the time the statement was made is inadmissible because the existence of the agency . . . relationship" did not exist). In this case, there is no evidence that Widener was ever Hernandez's supervisor, that she called Hernandez a "troublemaker" in the course of her employment, or that she was authorized by ADOT to make such statements. *See* Fed. R. Evid. 801(d)(2)(D). And while Widener did act as ADOT's agent when she participated in the decision to hire Hendrickson over Hernandez; Hernandez does not offer any evidence that Widener called Hernandez a "troublemaker" during the existence of that agency relationship. *See Robinson*, 739 F.2d at 1487. Instead, Olson's and Boyd's deposition testimony indicates that Widener made these comments years *before* she acted as a decisionmaker for ADOT on the interview panel. (*See* Dkt. # 66, Ex. 15 at 30–31, Ex. 16 at 31.) Thus, to the extent that Hernandez argues that Widener's comments should attributed to ADOT, there simply is no evidence in the record suggesting Widener was speaking on behalf of ADOT when she called him a trouble maker or that ADOT knew about Widener's alleged comments when it selected her to be on the interview panel.[4]

At oral argument, Hernandez contended that Widener's comments are not offered for the truth of the matter asserted—that Hernandez was a "troublemaker"—but to demonstrate Widener's state of mind at the time the interview panel decided to promote Hendrickson. *See* Fed. R. Evid. 803(3). This argument, which was first raised at oral argument, however is

---

[4]Hernandez's attempt to bolster his argument by pointing to additional hearsay is unpersuasive. Here, he alleges that Amavisca, another interview panelist, also believed Hernandez was a "troublemaker." To support this contention, Hernandez points to his July 15, 2009 deposition wherein he stated that two other employees overheard Amavisca call Hernandez a "troublemaker." That statement, however, is double hearsay, and Hernandez fails to point to any exception to the rule that would make the statement admissible.

1  waived. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001)
2  (holding that issues that are not raised in the parties' briefs are waived). Nevertheless, even
3  assuming that these statements are admissible, they are insufficient to demonstrate that
4  ADOT's reason for selecting Hendrickson is "unworthy of credence" or that a retaliatory
5  reason "more likely motivated" ADOT. *See Chuang*, 225 F.3d at 1123–24. First,
6  Hernandez's evidence is circumstantial, rather than direct, because it requires the Court to
7  make "inference[s] or presumption[s]" to prove a retaliatory motive. *See Godwin,* 150 F.3d
8  at 1221 ("Direct evidence is evidence which if believed provides the fact [of retaliatory
9  animus] without inference or presumption.") (quotation omitted). Here, Hernandez's
10 argument requires the inference or presumption that Widener believed Hernandez was a
11 "troublemaker" for the same reasons as Widener states other ADOT employees thought he
12 was a "troublemaker;" it further requires the inference that ADOT knew Widener's view in
13 this respect.

14       This circumstantial evidence is not sufficiently "specific" and "substantial" for a
15 reasonable jury to render a verdict in Hernandez's favor on his retaliation claim. *Stegall*, 350
16 F.3d at 1066. There is nothing in the record to suggest that Widener's alleged comments
17 about Hernandez being a "troublemaker" were made at, or near the time, that Hernandez was
18 denied the Supply Warehouse Manager position. *See Henry v. Milwaukee County*, 549 F.3d
19 573, 587 (7th Cir. 2008) (holding that plaintiffs' relation claim, which was based solely on
20 allegations that their supervisors called them troublemakers, was insufficient to defeat
21 summary judgment). In this case, Olson states that she overheard Widener refer to Hernandez
22 as a "troublemaker" years ago, to some unidentified person, and for some unknown reason.
23 Boyd provides similar testimony. There is nothing in the record, however, that suggests
24 ADOT knew that Widener believed Hernandez to be a "troublemaker," or that the panel
25 considered Hernandez's reputation, when Hendrickson was selected for the position. *See id.*
26 Nor do those who heard Widener make the alleged statement know why she made it.
27 Therefore, because Hernandez fails to identify when or why Widener made these alleged
28 comments, the Court finds that these comments are not sufficiently *specific*. The Court also

holds that this evidence is not *substantial* because one or two comments without additional evidence of retaliation is not sufficient to state a claim under Title VII. *See Godwin*, 150 F.3d at 1221 (observing that "stray remarks" that are "uttered in an ambivalent manner and [are] not tied directly" to the adverse employment decision are insufficient to surmount summary judgment) (quotations omitted); *see also Nesbit v. Pepsico, Inc.*, 994 F.2d 703 (9th Cir. 1993) (granting summary judgment on an age discrimination claim because an employer's comment about the plaintiff's "grey hair" was "weak circumstantial evidence of . . . animus."); *FDIC v. Henderson*, 940 F.2d 465, 469, 473 n. 16 (9th Cir. (1991) (holding that a statement without additional evidence of discrimination or retaliation was insufficient to state a claim under Title VII); *Culver v. Qwest Commc'n Corp.*, 2007 WL 963446 at *13 (D. Or. Mar. 23, 2007) (concluding "that a plaintiff's evidence of discrimination was not "specific and substantial" because "it consist[ed] of stray remarks, made one year before the termination decision, which [were] ambiguous and unconnected to the termination decision").

Based on his Response to the Motion for Summary Judgment, it appears that Hernandez's retaliation claim rests on his allegation that Widener and Amavisca thought he was a "troublemaker." (*See* Dkt. # 14–16.) At oral argument, however, Hernandez averred for the first time that there is direct evidence of retaliation and discrimination in this case because another Division of this Court found evidence of discrimination in Hernandez's class action lawsuit. While Hernandez's argument is barred because he did not raise it in his brief, *see Arpin*, 261 F.3d at 919, this argument also fails on the merits because Hernandez presents no evidence suggesting that ADOT subjected him to an adverse employment decision based on the previous lawsuit. If the mere fact that Hernandez prevailed in a previous lawsuit constituted direct evidence of subsequent retaliation and discrimination, any employee who prevails in previous discrimination lawsuit would have a cause of action under Title VII if he or she later applies for a promotion but is not selected. *See Lamar*, 2008 WL 2741630, at *5 (observing that mere knowledge of a prior EEOC complaint or discrimination lawsuit is insufficient to give rise to a cause of action under Title VII). Accordingly, the Court rejects

1  the notion that Hernandez was retaliated against, or otherwise discriminated, in *this* case
2  simply because he was discriminated against in *another* case.[5]

3  **II.     Hernandez's Discrimination Claim Based on National Origin Fails.**

4       Hernandez has not presented sufficient evidence for a reasonable to determine that
5  ADOT discriminated against him on the basis of race or national origin. As the Ninth Circuit
6  has reiterated, discrimination or "[d]isparate treatment claims must proceed along the lines
7  of the praxis laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S.
8  792 (1973), and its progeny." *Bodett v. Coxcom, Inc.*, 366 F.3d 736, 743 (9th Cir. 2004). To
9  present a prima facie case, a plaintiff must show that he or she (1) belongs to a protected
10 class, (2) was qualified for the position, (3) was subjected to an adverse employment action,
11 and (4) similarly situated employees were treated more favorably. *See McDonnell Douglas*,
12 411 U.S. at 802; *see also Vasquez v. County of L.A.*, 349 F.3d 634, 640 n. 5 (9th Cir. 2003).
13 If the plaintiff establishes a prima facie case, the burden of production shifts to the employer
14 to articulate some legitimate, nondiscriminatory reason for the challenged action. *Bodett*, 366
15 F.3d at 743 (citing *McDonnell Douglas*, 411 U.S. at 802). Should the employer carry this
16 burden, the plaintiff must show that the stated reason was not the employer's true reason, but
17 was a mere pretext for discrimination. *Id.*(citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S.
18 502, 506–08 (1993)).

19      For the same reasons as are discussed above with respect to his retaliation claim,
20 Hernandez has stated a prima facie discrimination claim and ADOT has set forth a legitimate
21 nondiscriminatory reason for not promoting Hernandez. Hernandez must now show that the
22 stated reason was not the employer's true reason, but was a mere pretext for discrimination.
23 *Bodett*, 366 F.3d at 743 (citing *Hicks*, 509 U.S. at 506–08). Hernandez, however, has failed
24 to offer sufficient evidence for a reasonable factfinder to determine that ADOT's proffered
25 reason for not hiring Hernandez is "unworthy of credence" or to find that ADOT's decision

---

[5]To the extent that Hernandez argues that he was retaliated against when Hendrickson was promoted into the special detail, those arguments are discussed below in Section.

was influenced by a discriminatory motive. *See Chuang*, 225 F.3d at 1123–24. To the extent that Hernandez has offered any evidence of pretext, it is not sufficiently "specific" and "substantial" for a reasonable factfinder to infer that a ADOT's articulated motive is pretext. *See Stegall*, 350 F.3d at 1066 (citation omitted).

To satisfy the unworthy of credence prong of the pretext analysis, a plaintiff must identify specific inconsistencies, contradictions, implausibilities, or weaknesses in the employer's explanation so that a reasonable factfinder could infer that the employer did not act for the asserted reason. *See Dominguez-Curry v. Nev. Transp. Dep't.*, 424 F.3d 1027, 1037 (9th Cir. 2005); *see also Burch v. Regents of Univ. of Cal.*, 433 F. Supp.2d 1110, 1130 (E.D. Cal. 2006). According to ADOT, it selected Hendrickson for the special detail because he was more qualified based on his past work experience as the acting Supply Warehouse Manager when Ausbun was absent. The record further demonstrates that ADOT continued the special detail because it wanted the new Traffic Operations Engineer to be able to interview the candidates for the Supply Warehouse Manager position. ADOT also provides evidence that it selected Hendrickson for the permanent position because he had the highest interview scores. Hernandez does not provide any evidence suggesting that this plausible explanation shifted over time or that management offered contradictory reasons for selecting Hendrickson.

Hernandez further fails to identify any specific weakness in ADOT's explanation. According to Hernandez, the circumstances and timing of the special detail were suspicious because Hendrickson was placed in the special detail just a few months after Hernandez testified in the class action lawsuit. The timing of the special detail itself, however, without more, is insufficient to *weaken* ADOT's consistent, legitimate, and nondiscriminatory explanation for selecting Hendrickson. *See Jackson v. Planco*, 660 F. Supp.2d 562, 582 (E.D. Pa. 2009) ("The timing issue, combined with Jackson's . . . unsupported claims about [the] reasons for terminating him, would not allow a reasonable factfinder to conclude that Planco is lying about its consistent, legitimate, and nondiscriminatory reason for terminating Jackson."). Accordingly, the Court finds that the timing of the special detail constitutes

circumstantial evidence that is not sufficiently "specific" or "substantial" evidence for a reasonable jury to find that ADOT's explanation for not selecting Hernandez is unworthy of credence. *See Stegall*, 350 F.3d at 1066.

Likewise, Hernandez fails to offer any evidence that a discriminatory reason more likely motivated ADOT's decision to promote Hendrickson, rather than Hernandez. *Chuang*, 225 F.3d at 1123–24. Here, Hernandez alleges that a member of the interview panel, Widener,[6] believed he was a "troublemaker." (Dkt. # 62, Ex. 2 at 19, 32; #66, Ex. 15 at 30, 49, Ex. 16 at 31.) As discussed above, these allegations are inadmissible hearsay, but even if they were admissible, Widener's alleged belief that Hernandez was a "troublemaker" is not evidence of discrimination based on race or national origin. *See Henry*, 539 F.3d at 587 (rejecting the plaintiffs' sexual harassment claim, even though the defendant referred to plaintiffs as troublemakers, because there was no evidence that the "alleged harassment was tied to their sex"). To some degree, these statements may be relevant to ADOT's alleged *retaliatory motive*; however, Hernandez fails to explain why these alleged comments are relevant to his *discrimination* claim. Regardless, even assuming that Widener's comments are relevant to Hernandez's discrimination claim, the Court finds that they fail for lack of specificity and substance, as discussed in the retaliation section of this Order. *See Stegall*, 350 F.3d at 1066 (requiring that a Title VII plaintiff that relies on circumstantial evidence to present "specific and substantial" evidence to withstand summary judgment); *see also Godwin*, 150 F.3d at 1221 (observing that "stray remarks" that are "uttered in an ambivalent manner and [are] not tied directly" to the adverse employment decision are insufficient to surmount summary judgment) (quotations omitted).

Hernandez further argues that ADOT's discriminatory motive is demonstrated by the fact that Widener approached him after the interview and stated that "he would be surprised who they're going to hire." (Dkt. # 66 at ¶ 104.) It is not clear, however, how this statement

---

[6]Hernandez alleges that Amavisca also thought he was a "troublemaker." As discussed above, however, this allegation is admissible double hearsay.

1 demonstrates discriminatory animus. There simply is nothing about it that implies that the decision to hire Hendrickson was based on race.

### III. Hernandez's Ostracism Claim Fails.

Hernandez's ostracism claim fails because he has not exhausted his administrative remedies as required under 42 U.S.C. §2000e-5. Under Title VII, a plaintiff is required to file a charge of discrimination with the EEOC within 300 days of the alleged discrimination. *See* 42 U.S.C. § 2000e-5. "The administrative charge requirement serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) (quotation omitted).

Hernandez alleges in his complaint that he was ostracized by his co-workers, who apparently refused to work with him because they though he was "trouble." (Dkt.# 66 at ¶¶ 73, 77, 83.) This claim of ostracism, however, was not included in Hernandez's EEOC Charge. In his EEOC Charge, Hernandez alleges only that,

> I began my employment on approximately April 11, 1988, my current job is Storekeeper. On approximately July 8, 2005, Victor Ausbun retired as the Supply Warehouse Manager. I immediately inquired about the vacancy and was told that the position would be posted. However, Raymond Hendrickson, White was detailed to the position. The position was posted several months later and I was interviewed, however, Raymond Hendrickson was selected for the position.
>
> I believe that I have been discriminated against because of my National Origin, Hispanic and retaliated against for opposing practices made unlawful under Title VII of the Civil Rights Act of 1964, as amended.

(Dkt. # 66 at ¶ 74.) There is nothing in this charge providing notice to ADOT that Hernandez sought relief from any alleged ostracism or harassment. *See Maui Police Dep't*, 276 F.3d at 1099. Instead, the Charge, which is narrow in scope, focuses only on his denied promotion due to discrimination and retaliation. *See Epps v. Phoenix Elem. Sch. Dist.*, 2009 WL 996308, at *3 (D. Ariz. 2009) (refusing to address claims of retaliation where plaintiff failed to allege retaliation in his Charge to the EEOC).

Moreover, "ostracism suffered at the hands of coworkers cannot constitute an adverse employment action" under Title VII. *Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000) (citing *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 869 (9th Cir. 1996)). As the Ninth Circuit observed in *Brooks*, "holding an employer liable because its employees refuse to associate with each other might well be unconstitutional: 'The First Amendment prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and associate.'" *Id.* (quoting *DiRuzza v. County of Tehama*, 206 F.3d 1304, 1308 (9th Cir. 2000)). In this case, Hernandez's evidence of ostracism consists of statements from coworkers who thought he was a "troublemaker" and refused to work with him. Hernandez has presented no evidence that anyone in a supervisory capacity or in management directed employees to stay away from Hernandez.

## CONCLUSION

Having concluded that there are no genuine issues of material fact with respect to Hernandez's Title VII claims,

**IT IS THEREFORE ORDERED** that ADOT's Motion for Summary Judgment (Dkt. # 61) is **GRANTED**. The Clerk of the Court is directed to **TERMINATE** this matter.

DATED this 22nd day of March, 2010.

_____
G. Murray Snow
United States District Judge